1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10        SOUTHERN DISTRICT OF CALIFORNIA

11 | ARLENE ELIZABETH              | Case No.: 16-CV-1300-GPC(WVG)
   | MASTERSON,
12 |                   Plaintiff,   | **REPORT AND**
13 | v.                             | **RECOMMENDATION ON**
   |                                | **CROSS-MOTIONS FOR**
14 | CAROLYN W. COLVIN,             | **SUMMARY JUDGMENT**
15 |                   Defendant.   | **[Doc. Nos. 13, 15.]**
16
17

18        This is an action for judicial review of a decision by the Acting Commissioner

19 of Social Security, Carolyn W. Colvin ("the Commissioner," or "Defendant"),

20 denying Plaintiff Arlene Elizabeth Masterson supplemental security income ("SSI")

21 benefits under Title XVI of the Social Security Act. The parties have filed cross-

22 motions for summary judgment, and the matter is before the undersigned Magistrate

23 Judge for preparation of a Report and Recommendation. For the reasons stated

24 below, the Court RECOMMENDS that Plaintiff's motion for summary judgment

25 be GRANTED, Defendant's cross-motion for summary judgment be DENIED, and

26 the matter be remanded for further proceedings.

1

# I. OVERVIEW OF SOCIAL SECURITY CLAIM PROCEEDINGS

Pursuant to the Act, the Social Security Administration ("SSA") administers the SSI program. 42 U.S.C. § 901. The Social Security Act authorizes the SSA to create a system by which it determines who is entitled to benefits and by which unsuccessful claimants may obtain review of adverse determinations. *Id.* §§ 423 *et seq.* Defendant, as Acting Commissioner of the SSA, is responsible for the Act's administration. *Id.* § 902(a)(4), (b)(4).

## A. SSA's Sequential Five-Step Process

The SSA employs a sequential five-step evaluation to determine whether a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520. To qualify for disability benefits under the Act, a claimant must show that (1) he or she suffers from a medically-determinable impairment[1] that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more and (2) the impairment renders the claimant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. §§ 423(d)(1)(A), (2)(A); 1382(c)(3)(A).

A claimant must meet both of these requirements to qualify as "disabled" under the Act, *id.* § 423(d)(1)(A), (2)(A), and bears the burden of proving that he or she "either was permanently disabled or subject to a condition which became so severe as to create a disability prior to the date upon which [his or] her disability insured status expired." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). An administrative law judge ("ALJ") presides over the five-step process to

---

[1] A medically-determinable physical or mental impairment "is an impairment that results from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

2

determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (summarizing the five-step process). If the Commissioner finds that a claimant is disabled or not disabled at any step in this process, the review process is terminated at that step. *Corrao v. Shalala*, 20 F.3d 943, 946 (9th Cir. 1994).

Step one in the sequential evaluation considers a claimant's "work activity, if any." 20 C.F.R. § 404.1520(a)(4)(i). An ALJ will deny a claimant disability benefits if the claimant is engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b).

If a claimant cannot provide proof of gainful work activity, the ALJ proceeds to step two to ascertain whether the claimant has a medically severe impairment or combination of impairments. The so-called "severity regulation" dictates the course of this analysis. *Id.* §§ 404.1520(c), 416.920(c); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

An ALJ will deny a claimant's disability claim if the ALJ does not find that a claimant suffers from a severe impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do "basic work activities." 20 C.F.R. § 404.1520(c). The ability to do "basic work activities" means "the abilities and aptitudes necessary to do most jobs." *Id.* §§ 404.1521(b), 416.921(b).

However, if the impairment is severe, the evaluation proceeds to step three. At step three, the ALJ determines whether the impairment is equivalent to one of several listed impairments that the SSA acknowledges are so severe as to preclude substantial gainful activity. *Id.* §§ 404.1520(d), 416.920(d). An ALJ conclusively presumes a claimant is disabled so long as the impairment meets or equals one of the listed impairments. *Id.* §§ 404.1520(d).

3

If the ALJ has not yet deemed a claimant disabled, but before formally proceeding to step four, the ALJ must establish the claimant's Residual Functional Capacity ("RFC"). *Id.* §§ 404.1520(e), 404.1545(a). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. *Id.* §§ 404.945(a)(1), 404.1545(a)(1). The RFC analysis considers "whether [the claimant's] impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). In establishing a claimant's RFC, the ALJ must assess relevant medical and other evidence, as well as consider all of the claimant's impairments, including impairments categorized as non-severe. *Id.* § 404.1545(a)(3), (e). If an ALJ does not conclusively determine a claimant's impairment or combination of impairments is disabling at step three, the evaluation advances to step four.

At step four, the ALJ uses the claimant's RFC to determine whether the claimant has the RFC to perform the requirements of their past relevant work. *Id.* § 404.1520(f). So long as a claimant has the RFC to carry out his or her past relevant work, the claimant is not disabled. *Id.* §§ 404.1560(b)(3). Conversely, if the claimant either cannot perform or does not have any past relevant work, the analysis presses onward.

At the fifth and final step of the SSA's evaluation, the ALJ must verify whether the claimant is able to do *any* other work in light of his or her RFC, age, education, and work experience. *Id.* § 404.1520(g). If the claimant is able to do other work, the claimant is not disabled. However, if the claimant is not able to do other work and meets the duration requirement, the claimant is disabled. *Id.* Although the claimant generally continues to have the burden of proving disability at step five, a limited burden of going forward with the evidence shifts to the SSA.

4

At this stage, the SSA must present evidence demonstrating that other work that the claimant can perform—allowing for his RFC, age, education, and work experience—exists in significant numbers in the national economy. *Id.* §§ 404.1520, 1560(c), 416.920, 404.1512(f).

**B.    SSA Hearings and Appeals Process**

In accordance with Defendant's delegation, the Office of Disability Adjudication and Review administers a nationwide hearings and appeals program. SSA regulations provide for a four-step process for administrative review of a claimant's application for disability payments. *See id.* §§ 416.1400, 404.900. Once the SSA makes an initial determination, three more levels of appeal exist: (1) reconsideration, (2) hearing by an ALJ, and (3) review by the Appeals Council. *See id.* §§ 416.1400, 404.900. If the claimant is not satisfied with the decision at any step of the process, the claimant has sixty days to seek administrative review. *See id.* §§ 404.933, 416.1433. If the claimant does not request review, the decision becomes the SSA's—and hence Defendant's—binding and final decree. *See id.* §§ 404.905, 416.1405.

A network of SSA field offices and state disability determination services initially process applications for disability benefits. The processing begins when a claimant completes both an application and an adult disability report, and submits those documents to one of the SSA's field offices. If the SSA denies the claim, the claimant is entitled to a hearing before an ALJ in the SSA's Office of Disability Adjudication and Review. *Id.* §§ 404.929, 416.1429. A hearing before an ALJ is informal and non-adversarial. *Id.* § 404.900(b).

If the claimant receives an unfavorable decision by an ALJ, the claimant may request review by the Appeals Council. *Id.* §§ 404.967, 416.1467. The Appeals Council will grant, deny, dismiss, or remand a claimant's request. *Id.* §§ 416.1479,

5

404.979. If a claimant disagrees with the Appeals Council's decision or the Appeals Council declines to review the claim, the claimant may seek judicial review in a federal district court pursuant to 42 U.S.C. § 405(g) or § 1383(c). *See id.* §§ 404.981, 416.1481. If a district court remands the claim, the claim is sent to the Appeals Council, which may either make a decision or refer the matter to another ALJ. *Id.* § 404.983.

## II. BACKGROUND

### A. Administrative Proceedings

In June 2012, Plaintiff protectively filed an application for SSI, alleging disability as of February 12, 2011. (AR 178-87.) Also in June 2012, the SSA denied Plaintiff's initial application. (AR 61-87.) In December 2012, Plaintiff was again denied benefits upon reconsideration. (AR 88-101.)

On July 2, 2014, the ALJ held a hearing to review Plaintiff's claim. (AR 35-59.) Plaintiff and a vocational expert ("VE") testified at the hearing. (AR 36.) The ALJ issued her written decision on September 9, 2014. (AR 16-29.) At step one of the sequential evaluation process described above, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 12, 2011. (AR 18.)

At step two, the ALJ found Plaintiff had severe impairments of (1) a spine disorder, (2) right shoulder disorder, and (3) cystitis (an inflammation of the bladder), but found various other claimed impairments were either not severe or lacked medical support.[2] (AR 18-22.)

---

[2] These included an episode of syncope (the temporary loss of consciousness caused by a fall in blood pressure), cardiac disorder, carpel tunnel, depressive disorder, pain disorder with psychological factors, and personality disorder with borderline features.

6

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 22.)

Between steps three and four, in her RFC assessment, the ALJ found Plaintiff could perform light work, except that she was limited to lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently; pushing and pulling within the same weight limits; standing and walking six out of eight hours with no prolonged walking for more than approximately 60 minutes at a time; sitting for six out of eight hours with the ability to stand and stretch for no more than 10 percent of the day; avoiding ladders, ropes, or scaffolds; no work hazards; occasional overhead reaching with the right extremity; unskilled work; and close proximity to a restroom facility. (*Id.*)

At step four, the ALJ found Plaintiff was able to perform her past relevant work as a caregiver. (AR 27.) The ALJ concluded the caregiver work qualified as past relevant work because Plaintiff had performed it within the prior 15 years, had done so for a sufficient period of time to learn the position and to provide average performance, and she had performed it "at the level of substantial gainful activity." (*Id.*) However, the ALJ did not explain the specific bases behind each of these findings.

At step five, based on the VE's testimony, the ALJ made an alternative finding that considering Plaintiff's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that Plaintiff could perform. (AR 27-28.) These jobs were "mail clerk," "small parts assembler," and "garment folder." (AR 28.)

7

Accordingly, the ALJ found that Plaintiff was not disabled from February 12, 2011, her alleged onset of disability date, through the date of the decision. (AR 28-29.)

Plaintiff thereafter requested a review of the ALJ's decision (AR 7-12), but the Appeals Council denied her request for review (AR 1-6). The ALJ's decision thereafter became the SSA's final and definitive determination in Plaintiff's case. 42 U.S.C. § 405(g).

On February 18, 2016, Plaintiff commenced the instant action for judicial review. (Doc. No. 1.)[3] Plaintiff thereafter filed a motion for summary judgment ("MSJ") (Doc. No. 14), and Defendant filed a cross-motion for summary judgment ("Cross-MSJ") and opposition to Plaintiff's MSJ (Doc. No. 16). Plaintiff did not file an opposition to Defendant's Cross-MSJ or a reply to Defendant's opposition to her MSJ.

**B.    Summary of Medical Records Submitted to the ALJ for Review**

On January 23, 2009, more than two years before the date Plaintiff alleged she became disabled, Luis C. Maas, III, M.D., conducted an MRI on Plaintiff's right shoulder. (AR 324-27.) The MRI indicated tears in her tendon, moderate degenerative change, and trace bursal fluid, but otherwise the findings were unremarkable. (AR 324.) Dr. Maas also investigated Plaintiff's complaint of pain in her neck and arm, and diagnosed her with mild diffuse degenerative spondylosis (degeneration) of the cervical spine, mild central canal stenosis (narrowing), and mild to moderate bilateral neural foraminal narrowing at multiple levels. (AR 326-27.) Later, on November 20, 2009, Plaintiff had an orthopedic evaluation of her

---

[3] Unless otherwise noted, references to page numbers in documents filed on the Court's CM/ECF system are to electronically-stamped page numbers created by the CM/ECF system, not to the document's original pagination.

right shoulder with and was diagnosed with impingement syndrome and subcromial bursitis (inflammation).  (AR 449.)

On June 24, 2011, Diana Sandoval-Cortez, M.D., examined Plaintiff for chronic lower back pain and determined that Plaintiff had mild degenerative changes in her lower lumbar spine.  (AR 383-84.)  There was mild bilateral neuroforaminal narrowing, moderate left paravertebral bridging osteophyte (bony outgrowth), and mild disc space narrowing but no other abnormalities.  (AR 383.) Then on January 17, 2012, Plaintiff saw Dr. Sandoval-Cortez again for back pain, and the doctor determined that Plaintiff had multi-level degenerative changes in her thoracic spine.  (AR 381.)

On March 6, 2012, Facika Tafara, M.D. completed a Supplemental Certification.  (AR 556.)  Dr. Tafara opined that the Plaintiff was disabled based on lumbar degenerative disc disease, cervical degenerative disc disease, and rotator cuff tear and that Plaintiff would be able to return to her regular or customary work on June 30, 2012.

On July 9, 2012, Plaintiff was hospitalized for chest pains.  (AR 329-35.) Plaintiff performed a treadmill test, where she essentially had normal results.  (AR 329.)  Plaintiff did not have further chest pain after admission, and the doctor recommended that she exercise and cease tobacco use.  Plaintiff was discharged in stable condition and diagnosed with chest pain, dyslipidemia, hypertension, and depression. The doctor prescribed Baclofen, Diphenhydramine, Prozac, Fluticasone nasal spray, Percocet, and Simvastatin, and advised her to take aspirin.  (AR 330.) Also, on the same date, another doctor examined Plaintiff and found minimal atelectasis (collapsed lung) or scarring but found no abnormalities.  (AR 376-77.)

9

Plaintiff was then referred to Alborz Hassankhani, M.D., on July 16, 2012, who found that Plaintiff had a negative (normal) exercise treadmill test, a slightly elevated level of LDL and total cholesterol, and palpitations. (AR 339.)

On October 8, 2012, Jaga Glassman, M.D. performed a psychiatric evaluation. (AR 385-91.) Dr. Glassman noted that Plaintiff was clean and well-dressed, maintained good eye contact, and had a calm, cooperative, polite, and respectful attitude and demeanor, though she showed some mild depressed mood. (AR 388-89.) She exhibited average intellectual functioning, repeating and remembering three words; correctly solving a money-changing problem; appropriately interpreting a proverb; stating Sacramento as the current capital of California; knowing that the sun rose from the east; and naming the current and previous presidents. (AR 389.) Dr. Glassman diagnosed her with pain disorder with medical and psychological factors, probable personality disorder, and musculoskeletal/orthopedic problems. (AR 390.) Dr. Glassman assessed a Global Assessment of Functioning (GAF)[4] score of 60, and opined that Plaintiff was capable of behaving in a socially appropriate manner, getting along with others, adapting to changes and stresses in the workplace; maintaining concentration, persistence, and pace for simple and complex tasks; and managing her own funds. (AR 390-91.)

The following day, Vicente R. Bernabe, D.O., conducted an orthopedic evaluation. (AR 392-96.) Dr. Bernabe did not observe any abnormal curvatures or scoliosis in Plaintiff's spine or deformities, scars, or masses in her shoulders. (AR

---

[4] A GAF score of 51-60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). Am. Psychiatry Assoc., *Diagnostic and Statistical Manual of Mental Health Disorders*, Fourth Ed. Text Revision (DSM-IV-TR), 34 (2000).

394.) The range of motion in her left shoulder was within normal limits, though she had a positive impingement sign and pain in her right shoulder. She was able to walk on her toes and heels without difficulty, and her alternating hand movements were normal. (AR 395.) Dr. Bernabe opined, among other things, that Plaintiff did not have any restrictions for fine and gross manipulative movements, but overhead motion was limited to an occasional basis due to her right upper extremity secondary to a rotator cuff tear and impingement syndrome. (AR 396.)

On October 30, 2012, S. Lee, M.D., a State agency physician, reviewed the medical evidence of record, and found, among other things, that Plaintiff's ability to reach to the right overhead was limited, but she could handle, finger, and feel without limitations. (AR 71.)

On November 1, 2012, State agency physician Nicole Lazorwitz, Psy.D, found that Plaintiff had mild restrictions in activities of daily living, but had no difficulties in maintaining social functioning or concentration, persistence, or pace and no repeated episodes of decompensation of extended duration. (AR 81.) Dr. Lazorwitz noted that Plaintiff seemed frustrated but otherwise was independent and could engage in basic activities of daily living. (AR 82.)

During the reconsideration phase, State agency physician R. Bitonte, M.D., reviewed the medical evidence on March 29, 2013. (AR 98-100.) His findings as to Plaintiff's manipulative limitations mirrored those of Dr. Lee. (AR 98-99.) On April 8, 2013, Richard Kaspar, Ph.D., another State agency physician, also reviewed the medical evidence. (AR 95-97.) He confirmed Dr. Lazorwitz's findings and the functional capacity assessed on October 30, 2012. (AR 95.)

On October 2, 2014, after the ALJ's decision, Plaintiff had an appointment with Akther Kotha, M.D. (AR 569-73.) Dr. Kotha found that Plaintiff had tenderness in the PIP and MCP joints, wrists, elbows, and ankles. (AR 572.) In a

11

section titled, "Discussion," Dr. Kotha stated that Plaintiff had fibromyalgia and pain, swelling, and stiffness in her joints. (AR 573.) Dr. Kotha determined that Plaintiff possibly had rheumatoid arthritis and prescribed Lyrica.[5] (*Id.*)

## C. Plaintiff's Testimony

Plaintiff testified at the hearing before the ALJ that she suffered from a number of conditions. She confirmed her application for benefits was based on osteoarthritis, tendinitis, carpel tunnel syndrome, right shoulder impingement, sciatica, chronic obstructive pulmonary disease, migraines, depression, high blood pressure, and high cholesterol. (AR 40-41.) In addition to those ailments, she reported plaque buildup in her heart and carotid arteries and weight gain. (AR 40.) She reported difficulty sleeping, staying focused, and felt nervous. (AR 42.) She reported that her chronic pain was the most problematic physical ailment she suffered and that the pain spread from the top of her neck to the bottom of her spine. (AR 42.) Her right shoulder and arm also caused her significant problems with maintaining strength. (AR 45.) She wore a back brace every day and was required to elevate her feet periodically throughout the day to alleviate pain, which became worse by lifting and by general exertion. (AR 48-49.) She believed she could lift no more than 10 pounds. (AR 51.) She reported constant, periodic spasms in her neck, legs, feet, and even stated her feet were becoming numb during the hearing. (AR 49-50.) She took a variety of medications for her ailments, and her side effects included diarrhea, swelling, and problems with memory and concentration. (AR 51.)

---

[5] Generically known as "pregabalin," Lyrica "is a prescription medicine approved . . . to treat fibromyalgia, diabetic nerve pain, spinal cord injury nerve pain and pain after shingles. [It] is also indicated to treat partial onset seizures in adults with epilepsy who take 1 or more drugs for seizures." https://www.lyrica.com/ about-lyrica (last visited July 5, 2017).

Plaintiff reported she lived alone in an apartment, washed dishes but did so with difficulty and while taking frequent breaks, did laundry, possessed a driver's license, and drove herself to the hearing. (AR 45-47.)

As for her employment history, Plaintiff confirmed she had worked as a caregiver for the prior 15 years. (AR 52.) In that capacity, she cooked for a client, assisted with hygienic needs, cleaned the house, and attended to other necessities. (*Id.*)

**D. Vocational Expert's Testimony**

A vocational expert also testified at the hearing. (AR 52-58.) The VE classified Plaintiff's caregiver position as light work that involved lifting up to 10 pounds and standing and walking for four hours. (AR 54.)

The ALJ presented the VE a hypothetical where the worker was limited to lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently; pushing and pulling within those same limits; standing and walking for six hours out of an eight-hour workday, with no prolonged walking for more than about an hour at a time; sitting six out of eight hours with the ability to stand and stretch for no more than 10 percent of the day; no work hazards; and a restroom facility in close proximity. (AR 54-55.) This hypothetical, based on Plaintiff's RFC, also limited her overhead reaching with her right extremity to occasional reaching. (AR 55.)

In response, the VE testified that there would be past work as actually performed but not as generally performed. (AR 55.) As for other unskilled light jobs in the national economy, the VE testified that other available jobs would include a mail clerk, a small parts assembler, and a garment folder. (AR 56.)

13

### III.  STANDARD OF REVIEW

A district court will not disturb the Commissioner's decision unless it is based on legal error or not supported by substantial evidence.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  Substantial evidence means more than a scintilla, but less than a preponderance.  *Id.*  Substantial evidence is evidence that a reasonable mind would consider adequate to support a conclusion.  *Id.*  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  If the evidence is subject to more than one rational interpretation, the ALJ's conclusion must be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The district court may enter a judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The Court may also remand the matter to the Social Security Administration for further proceedings.  *Id.*

### IV.  DISCUSSION

Plaintiff challenges the ALJ's adverse decision on two grounds.  First, she contends a new medical examination that occurred after the ALJ's decision issued explains why objective medical evidence did not exist to support many of her claimed impairments.  Although the ALJ did not have the opportunity to consider this post-decision medical evidence, Plaintiff contends this new medical evidence establishes that the ALJ's RFC assessment was not based on substantial evidence.  Second, she claims the ALJ erred when she concluded Plaintiff's past work was "past relevant work" because she performed it at "substantial gainful activity" ("SGA") levels.  She claims her work never met minimum earnings thresholds for the relevant years and thus could not have qualified.  The Court addresses the SGA issue first and recommends remand for further proceedings by the ALJ.  As part of

14

that remand, the ALJ should also consider the new medical evidence and develop the record.

**A.** **Substantial Evidence Does Not Support the ALJ's Finding that Plaintiff's Past Work Was Performed at a Substantial Gainful Activity Level; the Error Was Not Harmless; and the Matter Should be Remanded**

So long as a claimant has the RFC to carry out her past relevant work, she is not disabled. 20 C.F.R. § 404.1560(b)(3). In order for prior jobs to qualify as "past relevant work," they must have been "substantial gainful activity." *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001). Substantial gainful activity is defined as "work activity that involves doing significant physical or mental activities . . . that [a claimant does] for pay or profit." 20 C.F.R. §§ 404.1572, 416.972. "Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity." *Lewis*, 236 F.3d at 515. A presumption that a person engaged in substantial gainful activity is made if that person's average monthly income attributable to that activity exceeds a certain average amount that is designated for each applicable calendar year and which vary depending on the year. 20 C.F.R. §§ 404.1574, 416.974; *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990).

In her decision, the ALJ found Plaintiff's past work as a caregiver qualified as "past relevant work" in part because she performed it "at the level of substantial gainful activity."[6] (AR 27.) Plaintiff petitioned the Appeals Council to review the ALJ's SGA finding, contending that her past work did not meet the minimum

---

[6] The ALJ found: "Based on the evidence of record, the undersigned finds . . . [Plaintiff's work as a caregiver] is past relevant work because the claimant performed it within 15 years of the date of this decision, for a sufficient length of time to learn and provide average performance, *and at the level of substantial gainful activity*." (AR 27 (emphasis added).)

monthly earnings thresholds to qualify as such.[7]  (AR 8.)  The Appeals Council denied her request for review, and Plaintiff now again contends the ALJ erred in finding her past work was performed at SGA levels.

Defendant contends Plaintiff waived this issue because she failed to raise it before the ALJ.  In the alternative, Defendant contends the ALJ did not err and, in any event, error, if any, was harmless because the ALJ made an alternative finding at step five that Plaintiff could perform three jobs that are available in the national economy.  Plaintiff preemptively addressed this harmless error argument in her MSJ, arguing that the ALJ's step five findings were not based on substantial evidence and thus do not save the ALJ's error at step four.  Plaintiff is correct

This Court first finds that Plaintiff did not waive the SGA issue.  Second, substantial evidence does not support the ALJ's conclusory finding that Plaintiff performed the caregiver work at SGA levels.  Third, this error was not harmless. Finally, the Court recommends remand for further proceedings rather than ordering that disability benefits be granted.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[7] Between 2001 and 2011, Plaintiff had earnings as a caregiver in nine years out of eleven years.  (AR 8.)  The minimum average monthly earnings thresholds for each year are as follows (with Plaintiff's corresponding average monthly earnings in parentheses): 2001 $740 ($353.87); 2002 $780 ($765.61); 2004 $810 ($595.50); 2005 $830 ($520.55); 2006 $860 ($616.58); 2008 $940 ($408.85); 2009 $980 ($591.15); 2010 $1,000 ($961.84); and 2011 $1,000 ($537.66).  (*Id.*)  Plaintiff duplicated the earnings comparison chart she provided to the Appeals Council in the MSJ now pending before the Court.  (Doc. No. 13-1 at 8.)

### 1. Plaintiff Did Not Waive the SGA Issue

Although Defendant is correct that Plaintiff failed to raise the SGA issue before the ALJ, Plaintiff nonetheless did not waive it because she presented it to the Appeals Council when she sought review of the ALJ's decision.[8]

Defendant contends that under *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999), Plaintiff waived the SGA issue because she did not raise it at the administrative hearing. In *Meanel*, the plaintiff argued that, contrary to the vocational expert's testimony, the jobs the vocational expert identified did not exist in sufficient numbers in the local economy. 172 F.3d at 1115. In support, the plaintiff relied on new statistical evidence not provided to the ALJ at the hearing or to the Appeals Council. *Id.* The Ninth Circuit held that the plaintiff had not preserved this argument, explaining that "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Id.*

However, district courts in the Ninth Circuit have distinguished and declined to apply *Meanel* where the claimant failed to present an argument or issue to the ALJ but presented it to the Appeals Council in a subsequent request for review of

---

[8] It appears Plaintiff may have implicitly agreed or at least assumed that the caregiver position was past relevant work and later ambushed the ALJ in her review request to the Appeals Council. Although she later protested to the Appeals Council that the work did not qualify (AR 8), in her initial letter-brief to the ALJ, she identified her prior work under the heading, "Past Relevant Work," and simply contended she could "no longer perform past relevant work" due to her then-RFC. (AR 308.) This statement to the ALJ necessarily acknowledged or assumed that her past work *was* "past relevant work" in the first place, and she never argued otherwise to the ALJ. Indeed, at the hearing, her attorney sat silently as the ALJ told the vocational expert that Plaintiff "worked as a caregiver. *That's the only occupation she's had at SGA level* . . . ," and she never challenged this statement at any point in the hearing. (AR 53-54 (emphasis added).) Nonetheless, there was no waiver here due to Plaintiff's post-hearing letter-brief to the Appeals Council.

the ALJ's decision. *See, e.g.*, *Gomez v. Berryhill*, 2017 U.S. Dist. LEXIS 95882, at *5-6 (C.D. Cal. June 21, 2017); *Ruiloba v. Colvin*, 2016 U.S. Dist. LEXIS 70846, at *13-15 (C.D. Cal. May 31, 2016); *Chin v. Colvin*, 2015 U.S. Dist. LEXIS 43876, at *18-19 (D. Haw. Apr. 2, 2015). When district courts have applied *Meneal*, the claimant had failed to present the issue to *both* the ALJ and Appeals Council. *See, e.g.*, *Guerrero v. Colvin*, 2017 U.S. Dist. LEXIS 64248, at *18-19 (S.D. Cal. Apr. 26, 2017); *Simpson v. Colvin*, 2016 U.S. Dist. LEXIS 71648, at *3-4 (C.D. Cal. May 31, 2016); *Harhaw v. Colvin*, 2014 U.S. Dist. LEXIS 32256, at *13 (E.D. Cal. Mar. 10, 2014). Here, although Plaintiff failed to raise the SGA issue both in her letter-brief to the ALJ and during the hearing, she did raise it in her letter-brief to the Appeals Council. (AR 8.) Accordingly, the SGA issue is not waived.

## 2. Substantial Evidence Does Not Support the ALJ's Conclusory Finding that Plaintiff's Past Work Was Performed at SGA Levels

Without in-depth analysis or explanation, and in a conclusory fashion, the ALJ found Plaintiff's past work as a caregiver qualified as "past relevant work" in part because she performed it "at the level of substantial gainful activity." (AR 27; *see also* AR 53.) But she did not explain the specific bases behind this conclusion. Then for the first time, and after the ALJ had issued her decision, Plaintiff argued she did not perform her past work as the SGA level because her average monthly pay fell well below the presumptive minimum thresholds. (*See* Doc. No. 13-1 at 8 (chart depicting SGA levels and shortfalls).) Defendant does not directly dispute that Plaintiff's average monthly income fell below the average amounts for any of the nine years Plaintiff identified in her MSJ. *See* Doc. No. 15-1 at 17-18 (arguing that earnings are not presumptive proof of SGA but not challenging Plaintiff's chart); *see also* Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity, Social Security Administration Program Operations Manual

18

System ("POMS") § DI 10501.015(B), *available at* https://secure.ssa.gov/ poms.nsf/lnx/0410501015 (last visited July 11, 2017) (listing threshold earnings levels for years listed in Plaintiff's chart). Instead, Defendant argues other factors— the *Lewis* factors below—qualify the caregiver work as SGA. However, the ALJ did not address these factors—indeed, Defendant does not contend she did so—and the Court cannot affirm an ALJ's decision based on reasons the ALJ did not cite. *Stout v. Comm'r, SSA*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"); *see also Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("[R]egardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and [courts] confine [their] review to the reasons supplied by the ALJ.") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943) (other citations omitted)).

Although it indeed appears Plaintiff did not meet the minimum average monthly income, *see supra* footnote 7, the ALJ stated that she had past relevant work as a caregiver without developing the record on, or even addressing, the SGA issue.[9] The ALJ could not have done so because the presumption that the position was SGA was no triggered by sufficient earnings. This was error. However, the SGA earnings consideration is merely one factor in the overall determination whether past work qualifies as past relevant work that a claimant may continue to

---

[9] To be fair, Plaintiff provided the ALJ no reason to believe she contested this issue. She assumed her past work was "past relevant work" in her letter-brief to the ALJ and simply stated she could no longer perform that work. And she never contested the ALJ's representation to the VE that the caregiver work was "the only occupation she's had at SGA level." (AR 53.) Plaintiff essentially allowed the ALJ to proceed down the path of error and then sprung the issue upon the Appeals Council after the ALJ's decision issued.

perform—it is not the sole factor. As the Ninth Circuit has explained, when a claimant's earnings fall below the presumptive SGA thresholds,

> The presumption that arises from low earnings shifts the step-four burden of proof from the claimant to the Commissioner. Without the presumption, the claimant must produce evidence that he or she has not engaged in substantial gainful activity; if there is no such evidence, the ALJ may find that the claimant has engaged in such work. With the presumption, the claimant has carried his or her burden unless the ALJ points to substantial evidence, aside from earnings, that the claimant has engaged in substantial gainful activity. The regulations list five factors: the nature of the claimant's work, how well the claimant does the work, if the work is done under special conditions, if claimant is self-employed, and the amount of time the claimant spends at work. Generally, an ALJ should not consider activities like taking care of oneself, household tasks, hobbies, school attendance, club activities, or social programs to be substantial gainful activities.

*Lewis v. Apfel*, 236 F.3d 503, 515-16 (9th Cir. 2001) (citations omitted). Because Plaintiff's earnings did not exceed the minimum thresholds in the regulations, the presumption that the past work was SGA did not arise. It simply meant that the ALJ could not properly have concluded that the caregiver position was done at SGA levels and that she had the duty to inquire further and develop the record. At that point, the burden shifted to the ALJ to further inquire about Plaintiff's past work, develop the record, and provide other reasons to explain how the past work was SGA despite the low earnings. The ALJ did not do so here and thus could not have found that the factors above favored an SGA determination despite insufficient earnings. Accordingly, substantial evidence does not support the ALJ's finding that the caregiver position was "past relevant work" based, in part, on Plaintiff performing it at SGA levels.

### 3. The Error Was Not Harmless

Defendant contends that any error at step four was harmless because the ALJ made alternative findings at step five that Plaintiff could perform three other jobs that are available in the national economy. (Doc. No. 15-1 at 18-19.) Thus, even if the ALJ erred at step four, the error was inconsequential to her ultimate finding that Plaintiff was not disabled. Plaintiff argues the ALJ relied on suspect testimony because the VE (1) stated there was no conflict between Plaintiff's RFC and the Dictionary of Occupational Titles' ("DOT") description of these three jobs when (2) such a conflict in fact existed and was never resolved. (Doc. No. 13-1 at 10-13.) As a result, she argues, the VE's testimony is not substantial evidence for the ALJ's step five findings. (*Id.*) Plaintiff is correct. Although the ALJ made alternative findings at step five, those findings do not find support in substantial evidence. As a result, the ALJ's error at step four was not harmless because the ALJ also erred at step 5.

Harmless error principles apply in the context of the Social Security Act. *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). Error is harmless "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion," *Stout*, 454 F.3d at 1055, or where it is "clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *see Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *see also Batson v. Comm'r of SSA*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion). Specifically relevant to the SGA issue in this case, if an ALJ errs at step four, the error is harmless when the ALJ makes alternative findings based on substantial evidence at step 5. *Tommasetti*, 533 F.3d at 1042-43.

21

At step five of the disability analysis, the burden shifts to the Commissioner to show the existence of other work in the national economy that a claimant can perform. *See Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)). To meet this burden, the Commissioner "must 'identify specific jobs existing in substantial numbers in the national economy that [the claimant] can perform despite [her] identified limitations.'" *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). In making this determination, the ALJ relies on the DOT, which is the SSA's "primary source of reliable . . . information" about jobs that exist in the national economy. *Id.* at 845-46 (citations omitted). In addition to the DOT, the ALJ relies on the testimony of vocational experts with respect to specific occupations that a claimant can perform in light of her RFC. *Id.* at 846 (citations omitted). The ALJ then determines "whether, given the claimant's [RFC], age, education, and work experience, [the claimant] actually can find some work in the national economy." *Id.* at 846 (citations omitted). Before relying on the testimony of a VE, an ALJ has an "affirmative responsibility to ask about any possible conflict between [the VE's testimony] and information provided in the DOT." Social Security Ruling ("SSR") 00-4p, 2000 SSR LEXIS 8, at *8.

The ALJ in this case considered at step five whether there were other jobs in the national economy that Plaintiff could perform. At the outset, the ALJ asked the VE to explain any conflict between her testimony and the DOT, and she agreed to do so. (AR 53.) The VE then testified—that taking Plaintiff's RFC into account—Plaintiff could perform the jobs of a "mail clerk" (DOT 209.687-026), a "small parts assembler" (DOT 929.587-010), and a garment folder (DOT 789.687-066). (AR 56.) Based on the VE's testimony, the ALJ found Plaintiff could perform these three jobs, that they existed in the national economy in sufficient numbers, and

accordingly found Plaintiff was not disabled. However, the three occupations the VE identified all had a key physical demand that plainly exceeded the RFC determined by the ALJ and given in the hypothetical questions propounded to the VE. (AR 54-55, 57-58.)

Plaintiff's RFC explicitly limited her to "reaching overhead with the right extremity" on only an occasional basis. (AR 55.) Reaching "occasionally" means the activity is done only "up to 1/3 of the day." *See* SSR 83-10, 1983 SSR LEXIS 30, at *13. However, all three jobs the VE identified exceeded Plaintiff's RFC limitations. DOT 209.687-026 (mail clerk; frequent reaching, where "[a]ctivity or condition exists from 1/3 to 2/3 of the time"), DOT 929.587-010 (same for small parts assembler), DOT 789.687-066 (garment folder; constant reaching, where "[a]ctivity or condition exists 2/3 of the time or more"). Additionally, since Social Security Ruling 85-15 notes that "reaching" is "extending the hands and arms *in any direction*," 1985 SSR LEXIS 20, at *18-19 (emphasis added), the necessary implication is that all three jobs required frequent or constant reaching in all directions—a requirement Plaintiff cannot fulfill with her right arm. Thus, the reaching requirements of the three jobs the VE identified plainly conflicted with the reaching limitation in Plaintiff's RFC.[10] Additionally, the requirement that Plaintiff

_____

[10] Numerous other district courts in this Circuit have found an apparent conflict existed where the ALJ limited a claimant to "occasional reaching" but a VE testified a worker with the limitation was able to perform work the DOT indicated required constant or frequent reaching. *See, e.g.*, *Murry v. Colvin*, 2016 U.S. Dist. LEXIS 12345, at *20-21 (E.D. Cal. Feb. 1, 2016); *Lang v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 48558, at *19-20 (E.D. Cal. Apr. 8, 2014); *Giles v. Colvin*, 2013 U.S. Dist. LEXIS 132188, at *9-11 (C.D. Cal. Sep. 10, 2013); *Ricker v. Colvin*, 2013 U.S. Dist. LEXIS 107372, at *17-19 (D. Or. May 24, 2013); *Richardson v. Astrue*, 2012 U.S. Dist. LEXIS 138633, at *17-19 (N.D. Cal. Sept. 25, 2012); *Duff v. Astrue*, 2012 U.S. Dist. LEXIS 122442, at *10-13 (C.D. Cal. Aug. 28, 2012); *Bentley v. Astrue*,

23

be able to reach in all directions conflicted with her inability to do so with her right arm.

Given the above conflicts, the ALJ had a duty to ask follow-up questions to resolve the conflicts. The ALJ did not fulfill this duty. *Cf. Lidster v. Astrue*, 2012 U.S. Dist. LEXIS 555, at *8-9 (S.D. Cal. Jan. 3, 2012) (Sabraw, J.) ("In her RFC determination, the ALJ had found that Plaintiff was limited by 'no reaching above the shoulder level on the right.' *The ALJ questioned [the VE] about the reaching requirement, and determined that the reaching was not repetitive and could be done with either hand. Plaintiff had no limitations on reaching with his left hand.* [¶] *[T]he ALJ fulfilled her duty* of questioning the vocational expert regarding any conflict between the DOT definition and Plaintiff's limitations.") (emphasis added). Neither the ALJ nor the VE discussed the evident inconsistencies between the reaching requirements listed in the DOT and the reaching limitation imposed in the RFC. The ALJ's failure to do so meant that her findings at step five were not based on substantial evidence, and, as a result, her SGA error in step four was not harmless.[11]

---

2011 U.S. Dist. LEXIS 77042, at *9-11 (C.D. Cal. July 14, 2011); *Hernandez v. Astrue*, 2011 U.S. Dist. LEXIS 6377, at *4-6 (C.D. Cal. Jan. 21, 2011).

[11] The Court acknowledges that under some circumstances, the Court may rely on its common experience and find that no apparent conflict exists between a DOT occupation and a claimant's limitation. *See, e.g.*, *Gutierrez v. Colvin*, 844 F.3d 804, 808-09 (9th Cir. 2016). In *Gutierrez*, the court relied on common experience with the "familiar" occupation of cashiering to find that the occupation did not require overhead reaching. *Id.* at 808. As a result, the court reasoned that the ALJ did not have an obligation to ask follow-up questions where the "frequency or necessity of a task is unlikely and unforeseeable" as it was "with cashiers having to reach overhead." *Id.* Here, the Court cannot do the same with the occupations the VE identified because they are not readily familiar occupations.

Defendant contends that no conflict exists here because the VE agreed to identify any conflicts at the beginning of her testimony and then did not identify any conflicts, the implication being that a conflict must not have existed since the VE did not identify one. This is unpersuasive given that a conflict is plainly evident from the text of the DOT and Social Security Ruling 85-15. The VE not identifying a conflict either means that no conflict existed or she failed to recognize and identify one. The latter is a much more reasonable interpretation under the circumstances of this case. Even if no conflict existed in the view of the VE, one certainly seems apparent given the DOT requirements for the three jobs, Plaintiff's RFC, and the ALJ's hypothetical. It was therefore incumbent upon either the ALJ or the VE to affirmatively identify the conflict and address it rather than leave the record uncertain about what the VE actually believed about the conflict and whether Plaintiff could perform the jobs she identified despite the apparent conflict.

Defendant also notes that the ALJ's RFC assessment "did not endorse a limitation to frequent or constant reaching *in general*, but only to *overhead* reaching with the right extremity." (Doc. No. 15-1 at 14-15 (emphasis in general).) This simply underscores the fact that the VE should have identified and then been asked about the conflict between the reaching requirements in the DOT and Plaintiff's reaching limitation given that the ALJ specifically informed the VE about Plaintiff's overhead reaching limitation. The VE indeed may have excluded all jobs that required significant overhead reaching, but that is not at all evident from the record. The ALJ did not expressly instruct the VE to exclude such jobs, and the VE did not state she had done so.

### 4. Remand for Further ALJ Proceedings

In social security cases, remand may be for additional proceedings or for an award of benefits. *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014)

(explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded[,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted).  "Courts have generally exercised this power [to grant benefits] when it is clear from the record that a claimant is entitled to benefits, observing on occasion that inequitable conduct on the part of the Commissioner can strengthen, though not control, the case for such a remand." *Id.*

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020.  First, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Garrison*, 759 F.3d at 1020.  Second, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Id.*  Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.*  To remand for an award of benefits, each part of this test must be satisfied. *Id.*  If the record is "uncertain and ambiguous," the matter is properly remanded for further proceedings. *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1105 (9th Cir. 2014).

As explained above, the mere fact that Plaintiff's earnings appear to be below the SGA thresholds is not dispositive of whether her caregiver work qualifies as past relevant work.  The pertinent error in this case is the ALJ's step four finding that Plaintiff's caregiver work was performed at the SGA level and the subsequent failure to inquire into various relevant SGA factors. *See Lewis v. Apfel*, 236 F.3d 503, 515-16 (9th Cir. 2001) (identifying factors).  Although the ALJ erred when she did not develop the record and consider the factors in *Lewis*, the error does not conclusively favor Plaintiff or compel the automatic grant of benefits.  Moreover,

26

the apparent conflict between the VE's opinion and the DOT also merit further exploration and clarification. It is not clear from such an undeveloped record that Plaintiff is entitled to benefits. Accordingly, the Court cannot proceed past the first step of the test in *Garrison* because the record is uncertain, not fully developed, and additional administrative proceedings are required. This Court recommends remand for further proceedings and findings by the ALJ on the SGA issue.

## B. On Remand the ALJ Should Also Consider Dr. Kotha's Assessment

Plaintiff's challenge to the ALJ's RFC assessment is very narrow and based solely on a single medical report generated after the hearing and submitted to the Appeals Council after the ALJ's decision had already issued.[12] (*See* AR 569-73.) Rather than argue that the ALJ erred in finding that many of her claimed impairments were non-severe, she appears to acknowledge that this finding was correct at the time the ALJ made her findings, but argues that the new medical assessment by Dr. Akther Kotha explains why no objective medical evidence existed to support those impairments. (*See* Doc. No. 13-1 at 5 ("The ALJ found many of the impairments non[-]severe because of [the] lack of objective medical evidence. The diagnosis of Fibromyalgia a month after the unfavorable decision[] *reasonably answers the question . . . why no objective evidence exists.*") (emphasis added).) She contends that this new evidence renders the ALJ's RFC assessment unsupported by substantial evidence and asks the Court to remand the matter to allow the ALJ to consider Dr. Kotha's assessment as part of her RFC analysis. This is an appropriate course of action.

---

[12] Plaintiff also does not challenge the ALJ's RFC assessment based on the evidence the ALJ actually had before her and was able to consider. Her challenge of the ALJ's RFC finding is limited to reliance on post-hearing medical evidence that she claims undermines the RFC finding.

27

Although Dr. Kotha did not generate her assessment until after the ALJ's decision issued, that evidence is part of the record in this case because the Appeals Council considered it in its decision to deny Plaintiff's request for review. *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1160-61, 1163 (9th Cir. 2012) (holding that when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence.").[13] Defendant contends that the record as a whole supports the ALJ's findings even when Dr. Kotha's assessment is considered. That, however, is not readily apparent to this Court given the nature of Fibromyalgia and Plaintiff's claimed impairments. *See generally Benecke v. Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004) ("fibromyalgia . . . [is] a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease."). Although Plaintiff appears to experience some of the symptoms of Fibromyalgia, Dr. Kotha's report is ambiguous and is not conclusive. For example, it is unclear whether Dr.

---

[13] Defendant contends the Court lacks jurisdiction to review the Appeals Council's decision denying review of the ALJ's decision because the Council's decision is an unreviewable non-final agency action. (Doc. No. 15-1 at 12.) However, the Court is not reviewing the Appeals Council's decision and acknowledges that the ALJ's decision is the only agency action being reviewed in this matter. Yet, that doesn't place Dr. Kotha's report out of this Court's reach. As Defendant acknowledges, *Brewes* clearly requires the Court to consider Dr. Kotha's report as part of its review of the ALJ's decision—Dr. Kotha's report is part of the administrative record under the circumstances of this case.

28

Kotha's report is actually a Fibromyalgia *diagnosis*. While it appears she concludes that Plaintiff has this condition (*see* AR 573), it also appears she may have believed Plaintiff had been diagnosed with the condition in the past (*see* AR 569 (summarizing that Plaintiff "was dx [or diagnosed] with Fibro as well" and had been taking Lyrica)). But the record does not reflect Plaintiff being diagnosed with Fibromyalgia before Dr. Kotha's assessment.[14] Given these observations, the Court is reluctant to fully credit Dr. Kotha's report on a cold record. There may be factors or circumstances that affect the report's reliability or credibility. However, the Court is not in the best position to evaluate these concerns and determine this report's ultimate import. The ALJ, who made the initial RFC decision after a full hearing and based on the medical record, is in the best position to consider the ultimate impact of Dr. Kotha's assessment on the ALJ's own RFC findings. *See Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) ("It is the ALJ's role to resolve evidentiary conflicts."). Not having had the benefit of Dr. Kotha's assessment, the ALJ should be afforded the opportunity to consider it given the recommendation above that the matter be remanded for further proceedings.

Ultimately, although Dr. Kotha's report may support Plaintiff's claimed impairments, there may be qualitative issues with the report itself. This Court should not be the first to resolve these issues. That initial analysis should be left to the ALJ, who will have the benefit of being able to further explore Dr. Kotha's

---

[14] Even assuming that Dr. Kotha's assessment was a formal Fibromyalgia diagnosis, a diagnosis alone is not dispositive. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of a disability; claimant bears the burden of proving that an impairment is disabling). The mere existence of this report does not necessarily mean that Plaintiff is disabled, and the Court is not persuaded that this report conclusively has the meaning Plaintiff assigns it.

report and possibly seek medical expert testimony at the remand hearing if necessary. Remand is therefore appropriate because the record is not fully developed with respect to Dr. Kotha's report, any Fibromyalgia diagnosis, and their impact on the ALJ's assessment. Additional administrative proceedings would therefore be helpful both to the proceedings below and an eventual second judicial review, if any, by this Court.

**C. Defendant is Not Entitled to Summary Judgment**

Based on the foregoing recommendation that Plaintiff's MSJ be granted and this matter be remanded for further proceedings, this Court necessarily recommends that Defendant's Cross-MSJ be DENIED.

## VI. CONCLUSION

This Court RECOMMENDS that Plaintiff's MSJ be GRANTED, that Defendant's Cross-MSJ be DENIED, and the matter be REMANDED for further proceedings by the ALJ.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

**IT IS ORDERED** that **no later than July 25, 2017**, any party to this action may file written objection with the Court and serve a copy on all parties. The document shall be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on the appeal.

/ / /

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that, in consultation with the District Judge assigned to this matter, **no reply briefs will be accepted**.

**IT IS SO ORDERED.**

DATED:  July 11, 2017

Hon. William V. Gallo
United States Magistrate Judge

16-CV-1300-GPC(WVG)